BLATT, APPELLEE, *v.* HAMILTON COUNTY BOARD OF REVISION ET AL.,

APPELLEES; RHODES, AUD., APPELLANT.

[Cite as *Blatt v. Hamilton Cty. Bd. of Revision,*

123 Ohio St.3d 428, 2009-Ohio-5260.]

*Taxation — Residential real property — Valuation — Board of Tax Appeals'*
*determination of value is entitled to deference from court — When no*
*abuse of discretion is shown on issues of fact, court will not reverse —*
*Decision affirmed.*

(No. 2008-2332 — Submitted September 2, 2009 — Decided October 8, 2009.)

APPEAL from the Board of Tax Appeals, No. 2006-N-1808.

_____

**LANZINGER, J.**

**{¶ 1}** This case involves a property tax appeal from the Board of Tax
Appeals ("BTA") determination of a residential property value for tax year 2005.
The Hamilton County Auditor appeals the BTA's valuation, which is substantially
less than either the auditor's original valuation or the modified valuation of the
property found by the Hamilton County Board of Revision ("BOR"). The auditor
contends that the BTA's decision is unreasonable and unlawful because the BTA
rejected the probative record evidence of the taxpayer and of the BOR's
additional appraiser and adopted a value unsupported by the record. The auditor
also contends that the BTA overstepped its statutory authority when it ordered the
BOR to submit property record cards from earlier tax years.

**{¶ 2}** We affirm the BTA's decision and defer to the board's
determination of appropriate evidence in this case.

**Facts**

**{¶ 3}** Appellee Gina Blatt filed a complaint against the auditor's valuation of her residential property for tax year 2005. Blatt had purchased the property on January 2, 2004, for $534,000 and demolished the existing house the same month. She and her husband entered into an agreement to construct a new house at the site for $400,000. The auditor had concluded a value of $1,041,300,[1] adopting the property's $534,000 purchase price and adding $507,300 for improvements. Blatt sought to establish $775,000 as the true value of her property. At the BOR, Blatt presented a valuation analysis through her counsel. First, counsel derived a per-square-foot value by examining the auditor's land values for other properties along the same avenue. This procedure yielded a land value of $215,047. Next, counsel predicated value on cost of construction and land improvements at $550,000, for a total value of approximately $765,000.

**{¶ 4}** In contrast, the auditor presented the report and testimony of an appraiser, William A. Grauvogel. Grauvogel's report used the January 2, 2004 purchase price of $534,000 as the land value, and added $484,500 as the building value (a value derived from sales-comparison and reproduction-cost approaches) for a total value of $1,018,500.

**{¶ 5}** The BOR rejected Blatt's methodology and adopted a property value of $834,000, reflecting a land value of $534,000 (the January 2004 purchase price for the land and the house) plus 75 percent of the $400,000 actual new construction cost shown by the construction contract. The BOR applied the 75 percent factor with an understanding that the new house was only three-quarters finished as of the tax-lien date; at the BOR hearing, however, Blatt's counsel (whose statements were made under oath) asserted that as of the lien date a certificate of occupancy had been issued and the house was in fact occupied.

---

1. The property record card also reflects the property's entitlement to a 15-year new-construction abatement beginning in tax year 2005. The abatement limits the taxable value of the property but does not affect the initial determination of true value.

{¶ 6}  Blatt appealed the BOR's determination to the BTA, where the parties agreed to waive the presentation of additional evidence.  On November 12, 2008, the BTA issued an order to the BOR requiring submission of complete property record cards for tax years 2002, 2003, 2004, and 2005.  The BOR complied by letter dated November 14, 2008, and the BTA issued its decision.

{¶ 7}  The BTA first found that the property's January 2, 2004 sale price did not constitute its full value because of the demolition and later construction on the parcel.  *Blatt v. Hamilton Cty. Bd. of Revision* (Nov. 25, 2008), BTA No. 2006-N-1808, at 7, 9.  The BTA found that the present case fell within the exception to the use of an arm's-length sale when an improvement has been added to the property between the time of the sale and the tax-lien date.  Id. at 8, citing R.C. 5713.03(B).

{¶ 8}  Next, the BTA considered whether Blatt had discharged her burden to show that the value of the property was $775,000.  In her brief, Blatt urged the BTA to focus exclusively on the value of the land to the exclusion of the value of her newly constructed house.  In fact, Blatt advocated a higher value for the house before the BOR than the value the BOR ultimately adopted.

{¶ 9}  The BTA rejected Blatt's submission because the valuations of surrounding properties appearing on the property record cards were not probative evidence of the subject property's land value.  Id. at 9, 10, citing *WJJK Invests., Inc. v. Licking Cty. Bd. of Revision* (1996), 76 Ohio St.3d 29, 665 N.E.2d 1111. The BTA also stated that it had the duty to value both land and building and could not value the land in isolation.  Id. at 11-12.

{¶ 10} Having rejected Blatt's valuation, the BTA addressed the auditor's appraisal by Grauvogel.  Grauvogel's cost approach was found unreliable because the actual $400,000 construction contract refuted the appraiser's $642,388 cost valuation of the new house.  The BTA also faulted Grauvogel's sales-comparison

3

approach, because it failed to adjust comparables for lot size and because one comparable appeared to be significantly older.

{¶ 11} Instead, the BTA valued Blatt's property by taking the BOR's determination as its starting point and making two changes. The BTA used the actual cost of the new house as the value of the building and looked to the purchase price of the property for the value of the land. The BTA departed from the BOR's computation by using the full $400,000 cost of construction rather than $300,000 as 75 percent, because the house was complete on the lien date. In addition, the board determined the land value to be 70 percent rather than 100 percent of the purchase price. The BTA derived the 70 percent factor by looking to the tax year 2003 property record card and applying the same ratio of land value to total value as determined by the auditor for that tax year.[2]

{¶ 12} Finally, the BTA computed the value of the property for tax year 2005 by adding the $400,000 construction-cost figure to the $373,800 (70 percent of $534,000) land-value figure, arriving at a total value of $773,800 for the Blatt property.

**Analysis**

{¶ 13} Under our cases, " '[t]he BTA is responsible for determining factual issues and, if the record contains reliable and probative support' " for the BTA's decision, this court will affirm. *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14, quoting *Am. Natl. Can Co. v. Tracy* (1995), 72 Ohio St.3d 150, 152, 648 N.E.2d 483. More specifically, we " 'will not reverse the BTA's determination on credibility of witnesses and weight given to their testimony unless we find an abuse of * * * discretion.' " *Strongsville Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 112 Ohio St.3d 309, 2007-Ohio-6, 859 N.E.2d 540, ¶ 15, quoting *Natl. Church Residence v. Licking Cty. Bd. of Revision*

2. The earlier property record cards were not originally part of the record; they were submitted by the BOR in response to a BTA order as described previously.

4

(1995), 73 Ohio St.3d 397, 398, 653 N.E.2d 240. But " 'we will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion.' " *Satullo*, ¶ 14, quoting *Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino* (2001), 93 Ohio St.3d 231, 232, 754 N.E.2d 789.

{¶ 14} Under these standards, we defer to the BTA's determination of value in this case if we find that reliable and probative evidence supports the board's findings. Whether reliable and probative evidence exists in the record is itself a legal conclusion for this court's determination. See *Our Place, Inc. v. Ohio Liquor Control Comm.* (1992), 63 Ohio St.3d 570, 572-573, 589 N.E.2d 1303 (court reviewed record to determine whether reliable, probative, and substantial evidence supported a liquor commission order).

{¶ 15} The auditor characterizes this as a case where the BTA should have simply reverted to an initial determination of value by the county pursuant to *Simmons v. Cuyahoga Cty. Bd. of Revision* (1998), 81 Ohio St.3d 47, 689 N.E.2d 22. Apart from certain exceptional cases, the BTA should revert either to the BOR's determination or the auditor's original determination of value once it has found that the appellant has not proved a different value. *Colonial Village, Ltd. v. Washington Cty. Bd. of Revision*, 123 Ohio St.3d 268, 2009-Ohio-4975, 915 N.E.2d 1196, ¶ 31. But the issue of reverting or not reverting does not arise in this case, because the BTA adopted the BOR's determination and modified it. Unless there is some reason to bypass the BOR's determination altogether, the issue is whether the BTA's modifications of the BOR's determination are supported by the record.

{¶ 16} Gina Blatt bought property for $534,000 in January 2004, demolished the existing house, and built a new one. By January 1, 2005, the lien date for the applicable tax year, the new house had a certificate of occupancy. The auditor initially valued Blatt's property at $1,041,300 for 2005, then offered an appraisal of $1,018,500 to the BOR, and finally accepted a value of $834,000.

This last figure reflects discounted construction costs of $300,000 plus the entire $534,000 sale price, which the BOR equated to the value of the land.

{¶ 17} In reversing and finding a total value of $773,800, the BTA ordered two modifications to the BOR's decision. Because the evidence showed that the house was complete on January 1, 2005, the BTA restored all of the actual costs to the computation of the property's value. The evidence before the BTA justified this modification.

{¶ 18} The BTA then calculated the land value by using 70 percent of the $534,000 sale price, reasoning that Blatt purchased both the land and the house upon the land. To allocate the amount of the purchase price between the land and the former house, the BTA relied on the ratio of land value to total value from the property record card from tax year 2003.

{¶ 19} We have repeatedly stated that the " 'fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities, and this court will not disturb a decision of the Board of Tax Appeals with respect to such valuation unless it affirmatively appears from the record that such decision is unreasonable or unlawful.' " *EOP-BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 1, 2005-Ohio-3096, 829 N.E.2d 686, ¶ 17, quoting *Cuyahoga Cty. Bd. of Revision v. Fodor* (1968), 15 Ohio St.2d 52, 44 O.O.2d 30, 239 N.E.2d 25, syllabus.

{¶ 20} We find no merit in the auditor's assertion that the BTA "became fixated with * * * unnecessarily determining a land value" because of this court's decision in *Polaris Amphitheater Concerts, Inc. v. Delaware Cty. Bd. of Revision*, 118 Ohio St.3d 330, 2008-Ohio-2454, 889 N.E.2d 103. The BTA's decision nowhere cites *Polaris*. Moreover, *Polaris* clearly establishes that its holding arises solely from the limitations on this court's jurisdiction because of R.C. 5717.04's requirement that appellants set forth the errors complained of in the

BTA's decision. Indeed, *Polaris* expressly acknowledges that the jurisdiction of boards of revision and, derivatively, that of the BTA is controlled in the first instance by R.C. 5715.19(A). That statute explicitly places the total value of the property (both land and improvements) at issue in an appeal of valuation. Indeed, the BTA decision in this case makes that very point. *Blatt v. Hamilton Cty. Bd. of Revision* (Nov. 25, 2008), BTA No. 2006-N-1808, at 10-11. Accordingly, we find no error based upon a misapplication of *Polaris*.

**{¶ 21}** It is undisputed that Blatt purchased a house along with the land in January 2004. Although demolition occurred quickly and Blatt began construction on her new house, this did not mean that the existing house was valueless. It does not seem unreasonable to apportion the total sale price between the existing house and the land value. The BTA used a land-value to total-value ratio to determine the portion of the sale price that reflected the value of the land. We now defer to the BTA's reasoning as part of its fact-finding expertise.

**{¶ 22}** Our acceptance of the BTA's conclusions requires discussion of the auditor's additional argument that the BTA exceeded its statutory authority by requiring the BOR to transmit the property record cards from earlier years. As the auditor acknowledges, R.C. 5717.01 expressly authorizes the BTA, in addition to its power to "order the hearing of additional evidence," to "make such investigation concerning the appeal as it deems proper." The plain language of the statute allows the BTA itself to determine the propriety of supplementing the record, and that means that we should as a general matter defer to the board's decision to seek additional information.

**{¶ 23}** Nothing in the BTA's actions militates against according deference in this case. The information the BTA sought related directly to the property at issue and constituted public-record data whose authenticity could not be impeached. In addition, the auditor has not been prejudiced by the additional investigation: the auditor maintained the very records requested, was fully able to

object below, and has in fact availed himself of the opportunity to assert his claim of error through appeal to this court. Taken together, these circumstances decisively distinguish the present case from the situation in which a party attaches documentation that was never offered at hearing to a post-hearing brief. Cf. *Columbus Bd. of Edn. v. Franklin Cty. Bd. of Revision* (1996), 76 Ohio St.3d 13, 16-17, 665 N.E.2d 1098.

### Conclusion

**{¶ 24}** Accordingly, we defer to the BTA's application of the 70 percent factor to determine the land value of the property and affirm the decision of the BTA.

Decision affirmed.

PFEIFER, LUNDBERG STRATTON, and CUPP, JJ., concur.

MOYER, C.J., and O'CONNOR and O'DONNELL, JJ., dissent.

_____

**O'CONNOR, J., dissenting.**

**{¶ 25}** I dissent.

**{¶ 26}** Appellee is a residential homeowner who (1) purchased the property for $534,000 in January 2004, (2) immediately demolished the existing house, and (3) built a new house on the parcel, thereby incurring approximately $400,000 in construction costs. By January 1, 2005, which is the lien date for the tax year at issue, the new house already had a certificate of occupancy. The appellant auditor contests the BTA's decision because the BTA, after rejecting the owner's theory for reducing the value assigned to her property, adopted an even lower value than the one the owner advocated. That value, $773,800, lies well below the documented amount – $934,000 ($534,000 purchase price plus $400,000 in construction costs) – that the owner expended to acquire and improve the property. It is also below the range of value indicated by the comparable sales submitted to the BTA by the auditor's appraiser.

{¶ 27} The majority affirms the BTA's decision by deferring to its fact-finding expertise. But no deference is due in this case, because of the clear legal error in the BTA's decision. See *Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino* (2001), 93 Ohio St.3d 231, 232, 754 N.E.2d 789 (this court "will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion").

{¶ 28} We have held that, in determining the value of real property, "each tax year should be determined based on the evidence presented to the assessor that pertains to that year." *Olmsted Falls Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 122 Ohio St.3d 134, 2009-Ohio-2461, 909 N.E.2d 597, ¶ 20. Consistent with this principle, we have held that the BTA's determination of value for the current year should be "uncontrolled by the value assessed for prior years," *Freshwater v. Belmont Cty. Bd. of Revision* (1997), 80 Ohio St.3d 26, 28-29, 684 N.E.2d 304, because it is improper to presume that the value assigned to a property for a prior tax year is correct. Id. at 28, 684 N.E.2d 304; *Olmsted Falls*, ¶ 21. The BTA's decision to determine land value by applying a 70 percent factor to the $534,000 purchase price ran afoul of this principle.

{¶ 29} By deriving the percentage from a prior year's valuation, the BTA necessarily presumed the validity of the land-value ratio for the prior year. Indulging this presumption violates the holdings of *Olmsted Falls* and *Freshwater*.

{¶ 30} Moreover, even if the majority were justified in presuming the valuation for tax year 2003 to be correct, there is no reason why the land-value ratio for that year would necessarily apply to determining the land value for tax year 2005 given all the intervening events. In this regard, the BTA decision does not merit our deference because it is unreasonable; that is, there is no reasonable basis for assuming that the land-value ratio from a prior year would validly apply to a later year.

**{¶ 31}** Finally, the value determined by the BTA is not in accord with the record. As already noted, the property owner was willing to expend the $534,000 purchase price and $400,000 in construction cost over the period of a single year, and the comparable sales offered by the auditor's appraiser show that homes similar to the brand new home the appellee constructed sold in the $1,000,000 range. Quite simply, the record is not consistent with finding a value of $773,800.

**{¶ 32}** I would reverse the decision of the BTA and remand with instructions that the entire $534,000 purchase price be used as the land value.

MOYER, C.J., and O'DONNELL, J., concur in the foregoing opinion.

_____

Aronoff, Rosen & Hunt, Richard A. Paolo, Stephen R. Hunt, and Courtney M. Brooks, for appellee Gina Blatt.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Thomas J. Scheve, Assistant Prosecuting Attorney, for appellant.

_____