[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Mars Urban Solutions, L.L.C. v. Cuyahoga Cty. Fiscal Officer,* Slip Opinion No. 2018-Ohio-4668.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-4668

THE STATE EX REL. MARS URBAN SOLUTIONS, L.L.C., ET AL., *v.* CUYAHOGA COUNTY FISCAL OFFICER ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Mars Urban Solutions, L.L.C. v. Cuyahoga Cty. Fiscal Officer,* Slip Opinion No. 2018-Ohio-4668.]**

*Mandamus—Writ of mandamus sought to compel county fiscal officer and board of revision to comply with BTA judgment—County offices complied with decision for the applicable years—Writ denied.*

(No. 2017-0442—Submitted April 10, 2018—Decided November 21, 2018.)

IN MANDAMUS.

————————————

**Per Curiam.**

{¶ 1} In this original action, relators, Mars Urban Solutions, L.L.C. ("Mars Urban"), and Michael Majeski,[1] seek a writ of mandamus to compel respondents Cuyahoga County fiscal officer and Cuyahoga County Board of Revision ("BOR")

————————————

1.  Michael Majeski is an officer, member, and/or counsel of Mars Urban Solutions, L.L.C.

to comply with a judgment of the Ohio Board of Tax Appeals ("BTA") that reduced the 2010 value of a property that Majeski owned and later conveyed to Mars Urban. Because 2012 was the first year of a new sexennium—and any dispute that relators had pertaining to the property value for any year beyond 2011 should have been filed as a new and separate claim for each year—and because the fiscal officer and the BOR submitted evidence sufficient to establish that both entities complied with the BTA's judgment at issue for tax years 2010 and 2011, we deny the writ.

### Background

{¶ 2} On July 1, 2008, Majeski purchased 888 Clarence Avenue, located in Cleveland, Ohio, for $9,501. Majeski filed tax-valuation complaints regarding the property for tax years 2008, 2009, and 2010, seeking a reduction in the value of the property. The BOR reduced the tax value of the property for tax years 2008 and 2009. Majeski did not appeal those determinations.

{¶ 3} With regard to tax year 2010, the BOR retained the fiscal officer's value of $92,800, and Majeski appealed the BOR's decision to the BTA. In a March 7, 2014 order, the BTA determined that the subject property was "transferred among apparently unrelated parties in July 2008 for $9,501," and that therefore "the transaction was both recent and arm's-length and the best indication of the subject's value as of [the] tax lien date." Consequently, the BTA held that as of January 1, 2010, the property's true value was $9,500.[2]

{¶ 4} On March 31, 2017, relators commenced this original action for a writ of mandamus against the fiscal officer, the BOR, and the BTA. The fiscal officer and the BOR filed a joint motion to dismiss the complaint, and the BTA filed a separate motion to dismiss the claims against it. On May 4, 2017, relators dismissed their claims pertaining to the BTA. On December 20, 2017, we denied as moot the

---

2. On December 24, 2014, Majeski conveyed the property to Mars by deed. Cuyahoga County Fiscal Officer, https://recorder.cuyahogacounty.us/searchs/Docindex.aspx (accessed October 8, 2018).

BTA's motion, granted an alternative writ as to relators' fourth claim for relief,[3] and dismissed the remaining claims. 151 Ohio St.3d 1470, 2017-Ohio-9111, 87 N.E.3d 1269. Subsequently, the BOR and the fiscal officer filed evidence.[4]

## Legal Analysis

{¶ 5} The only issues that remain to be decided in this case are (1) whether the fiscal officer and the BOR complied with the BTA's judgment decreasing the 2010 true value of the property at issue to $9,500 and (2) whether the $9,500 value carries over to tax years subsequent to 2011, particularly beyond the 2012 sexennial reassessment.

{¶ 6} To be entitled to a writ of mandamus, a relator must demonstrate (1) a clear legal right to the requested relief, (2) a corresponding clear legal duty on the part of the respondent to provide it, and (3) the lack of an adequate remedy in the ordinary course of law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6. A relator in a mandamus case must prove entitlement to the writ by clear and convincing evidence. *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235, paragraph three of the syllabus.

{¶ 7} We have observed that "in appeals from boards of revision, the BTA must determine the taxable value of the property and certify the decision to, *inter alios*, the county auditor. When the BTA's order becomes final, the tax officials, including the county auditor, must 'make the changes in their tax lists or other records which the decision requires.' " *Columbus Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 87 Ohio St.3d 305, 307, 720 N.E.2d 517 (1999), quoting R.C.

---

3. Relators' fourth claim for relief alleges that the fiscal officer and the BOR have failed to abide by the BTA's March 7, 2014 judgment and have failed to take the appropriate actions to effectuate the order.
4. Relators did not file any evidence as directed by this court's December 20, 2017 entry, and we will not consider as evidence the documents that were included in the appendices to their merit and reply briefs, because the appendices do not comply with S.Ct.Prac.R. 16.02(B)(5).

5717.03(F). Thus, the fiscal officer and the BOR each have a clear statutory duty to "make the changes in their tax lists or other records which the [BTA's] decision requires." R.C. 5717.03(F). To obtain the requested relief, relators must prove that the fiscal officer and/or the BOR failed to change the relevant records to reflect the BTA's order pertaining to the true value of the property for the germane years and that relators did not have an adequate remedy in the ordinary course of the law for any dispute as to respondents' application of the BTA's judgment.

{¶ 8} The BTA's order specified that the reduced value applied "as of January 1, 2010." The fiscal officer and the BOR assert that when each office received the BTA's order, employees from each office updated the applicable tax documents to reflect the reduced value and either processed a credit or issued a refund to Majeski.

{¶ 9} Shelly Davis, the BOR's administrator, serves as the BOR records custodian. Davis reviewed the BOR's records and attested that as to tax year 2010, the BOR initially "retained the fiscal officer's value." She added that upon receiving the BTA's decision regarding the 2010 value, the BOR "sent documentation to the RPD [Real Property Department] in order that the decision could be processed and reflected on the Fiscal Officer's records, and the Treasurer's tax duplicate." As evidentiary support for Davis's statements, the fiscal officer and the BOR submitted a copy of a "screen shot[] from the BOR's Legacy Application evidencing the filing" of relators' complaint regarding the 2010 tax year. The document indicates that the BOR valued the property at $9,500 for tax year 2010.

{¶ 10} Marian Mihu, the supervisor of the RPD at the fiscal office, is the custodian of the RPD's records. She attested that the "RPD is charged with the duty of processing value [sic] real estate tax value decisions made by the [BOR] * * * and other tribunals" and that she personally processes value decisions and supervises the RPD employees who are charged with processing the tribunals' value decisions. Mihu averred that as to tax year 2010, "[o]nce the BOR released

4

to the RPD the documentation evidencing the BTA's [March 7, 2014] decision, the RPD processed the decision in order that it be reflected within the records of the Fiscal Officer." Mihu's affidavit, which was submitted with documentation that had been attached and explained by Mihu, certified that the fiscal officer credited and refunded Majeski the amounts to which he was due. And relators have not submitted evidence to the contrary.

{¶ 11} Mihu's affidavit also establishes that in Cuyahoga County, "[t]ax year 2009 was the first year of a triennial update year, which triennium encompasses tax years 2009, 2010, and 2011." *See AERC Saw Mill Village, Inc. v. Franklin Cty. Bd. of Revision*, 127 Ohio St.3d 44, 2010-Ohio-4468, 936 N.E.2d 472, ¶ 19 ("As the county's tax assessor, the county auditor is required to value and assess property tax against the taxable property in the county. R.C. 5713.01(B) and 5713.03. Specifically, the auditor must reappraise property values once every six years and update the values at the interim three-year point"). In *AERC*, we confirmed that "[t]ypically, the auditor does carry over the value from the first year of a triennium to the next year, unless some event that [sic] triggers a need to change the valuation." *Id*. at ¶ 32. We also observed that "R.C. 5715.19(D) establishes [that] the figure the auditor uses when carrying forward a previous year's value is the value as redetermined through the proceedings conducted on a valuation complaint." *Id*. Thus, *AERC* affirms that when a subject property's value is reduced in the middle of a triennium update, the reduced value carries forward until the end of that triennium, and at the start of the next sexennial valuation, the auditor must reappraise the property and determine a new value going forward.

{¶ 12} The BTA's order reduced the property's value for tax year 2010. The reduced value also applied to tax year 2011, which was the final year of that triennium. Relators argue that the $9,500 value should apply to subsequent tax years and that the county has the authority to determine a new value only under very limited circumstances. But it is "elemental that for purposes of any challenge

to the valuation of real property, each tax year constitutes a new 'claim' or 'cause of action,' such that the determination of value for one tax year does not operate as res judicata that would bar litigation of value as to the next tax year." *Olmsted Falls Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 122 Ohio St.3d 134, 2009-Ohio-2461, 909 N.E.2d 597, ¶ 16, citing R.C. 5715.19(A) and (D). *See also AERC* at ¶ 32 ("Moreover, that new value can be displaced only by a showing that some other value is correct"). The BTA's decision as to the subject property pertained to tax years 2010 and 2011 and thus does not necessarily carry forward into subsequent tax years. *See AERC* at ¶ 22 ("to allow the carryover to displace a new valuation * * * defeats the purposes of the valuation statutes"). Therefore, relators have not established that either the fiscal officer or the BOR has failed to execute a clear legal duty. Moreover, relators had an adequate remedy in the ordinary course of the law—they should have filed a new claim for each year in which they believed a valuation error occurred. Consequently, mandamus is not available.

**{¶ 13}** In addition, relators have not shown that the fiscal officer or the BOR has a clear legal duty to apply the BTA's value to the property when a new sexennium begins or that the fiscal officer or the BOR has failed to process the reduced value of the Clarence Avenue property that was ordered by the BTA.

Writ denied.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, FISCHER, DEWINE, and DEGENARO, JJ., concur.

_____

Michael B. Majeski, pro se and for Mars Urban Solutions, L.L.C.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Mark Greenfield and Anthony Giunta Jr., Assistant Prosecuting Attorneys, for respondents Cuyahoga County Fiscal Officer and Cuyahoga County Board of Revisions.

Michael DeWine, Attorney General, and Brian R. Honen and Keith O'Korn, Assistant Attorneys General, for respondent Ohio Board of Tax Appeals.

_____